USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1526

 NORTHERN WIND, INC.,

 Plaintiff, Appellant,

 v.

WILLIAM M. DALEY, SECRETARY OF COMMERCE; UNITED STATES DEPARTMENT
 OF COMMERCE, NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION;
 AND UNITED STATES OF AMERICA,

 Defendants, Appellees.

 
 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Edward F. Harrington, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 Coffin, Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 
 
 
 Michael A. Collora, with whom Eve Slattery and Dwyer &
Collora, LLP, were on brief for appellant.
 Todd S. Kim, Attorney, with whom Richard Monikowski, Attorney,
Robert L. Klarquist, Attorney, Lois J. Schiffer, Assistant Attorney
General, Department of Justice, Environment & Natural Resources
Division, and Joel La Bissonniere, National Ocean and Atmospheric
Administration, Office of General Counsel, were on brief for
appellees.

December 29, 1999

 
 
 STAHL, Circuit Judge. Plaintiff Northern Wind, Inc.
("Northern Wind") appeals the district court's grant of summary
judgment for Defendant, the National Oceanic and Atmospheric
Administration ("NOAA"). The decision upheld a civil penalty
assessed against Northern Wind pursuant to 16 U.S.C. 1858, and a
finding by an Administrative Law Judge ("ALJ") that Northern Wind
was liable for the possession of nonconforming Atlantic sea
scallops under the Magnuson-Stevens Fishery Conservation and
Management Act ("Magnuson Act"), 16 U.S.C. 1857, as implemented
by 50 C.F.R. 650.7(a). Because the ALJ's decision is supported
by substantial evidence, we affirm.
 I.
 Background
 Northern Wind, the owner of a seafood processing plant in
New Bedford, Massachusetts, entered into an agreement with Ocean
Obsession, Ltd. ("Ocean Obsession"), a seafood supplier, for the
storage of Atlantic sea scallops. The agreement gave Ocean
Obsession the right to offload and store at Northern Wind's
refrigerated facilities its catches of sea scallops. Ocean
Obsession warranted that all of the scallops it stored in the
cooler would be in conformance with the Magnuson Act and othermaritime regulations. In exchange, Ocean Obsession gave Northern
Wind a right of first refusal on the scallops stored in its cooler. 
 Ocean Obsession's storage area was located in a locked,
alarmed, and partitioned off portion of Northern Wind's seafood
cooler with a separate entrance. This arrangement allowed Ocean
Obsession employees unlimited access to the cooler at any time. 
The only other person with access to this separate portion of the
cooler was the owner of Northern Wind. Ocean Obsession often would
deliver scallop stock to the facility after Northern Wind's regular
business hours. On these occasions, Northern Wind would view the
stock stored in the cooler on the next business day. Nevertheless,
Northern Wind had access to the cooler at all times, even if a
representative of Ocean Obsession was not present. If Northern
Wind found the stock acceptable, it would negotiate a price with
Ocean Obsession for its purchase; if not, Northern Wind would
reject the product and Ocean Obsession was free to seek other
buyers.
 On September 28, 1992, members of the National Marine
Fisheries Service ("NMFS"), part of the NOAA, arrived at Northern
Wind's facilities to inspect its stock for conformity with the
Magnuson Act. The previous night, Ocean Obsession had offloaded
and stored 12,439 pounds of scallops at Northern Wind's facilities. 
This harvest was made up of one hundred bags ("the Canton bags")
that were shucked in the United States and two hundred bags ("the
Weymouth bags") that were shucked at sea. The NMFS agents took ten
random samples of scallops from these three hundred bags, to
determine whether they conformed with the applicable regulations.
See 50 C.F.R. 650.7(a) (making it unlawful to possess scallops
that are too small "at or prior to [their] first [mixing, sorting,
or processing] transaction in the United States"). At the time,
the maximum allowable weight for Atlantic sea scallops was thirty
meats per pound, which means that any sample of scallops weighing
one pound could contain no more than thirty shucked scallops. 
However, the samples the NMFS took from both sets of bags and
measured at Northern Wind had an average weight of 75.8 meats per
pound. The NMFS thus seized all of the scallops, notified the NOAA
of the violation, and fined Northern Wind $35,000.
 Subsequently, the NOAA issued to Northern Wind a Notice
of Violation and Assessment, charging it with the possession of
nonconforming Atlantic sea scallops in violation of 50 C.F.R. 
650.7(a). Northern Wind requested a hearing to challenge whether
the NMFS seized the scallops after the first transaction in the
United States, contending that the scallops had been shucked on
land prior to being stored, thus they were not be subject to the
regulation because the shucking was the first transaction in the
United States. Northern Wind also challenged whether it actually
"possessed" the scallops within the meaning of the statute. An
ALJ held a three-day administrative hearing on these issues, but
retired prior to issuing an opinion. A second ALJ issued an
initial decision two years later based upon the existing record. 
That ALJ found that while the NMFS seized scallops from both the
Canton bags and the Weymouth bags, only those from the Weymouth
bags evidenced a violation because they were shucked at sea and had
not been mixed, sorted, or processed after they landed in the
United States. The deciding ALJ ordered the NOAA to reimburse
Ocean Obsession for the improperly seized Canton bags and further
found that Northern Wind did possess all of the offending scallops
within the meaning of the statute. The ALJ thus upheld the fine
imposed for the Weymouth bags. 
 Both the NOAA and Northern Wind appealed the ALJ's
decision to the Deputy Undersecretary of the NOAA. The NOAA
challenged its obligation to pay compensation for the Canton
scallops, and Northern Wind alleged various procedural errors. 
Northern Wind also raised a new argument on appeal, asserting that
because the ALJ found that only the Weymouth scallops were
nonconforming and because the Weymouth and Canton scallops were
"mixed" together in the cooler, it follows that all of the random
samples had been mixed, meaning they had been through their first
transaction in the United States and were not subject to the
regulation at issue. The Deputy granted the NOAA's challenge to
the compensation order and summarily denied Northern Wind's
petition for discretionary review. The Deputy did not reach the
merits of Northern Wind's appeal. 
 Northern Wind then filed suit in the District of
Massachusetts, seeking judicial review of the issues it raised in
the original administrative hearing, but did not reassert the
mixing argument that the Deputy denied. Both Northern Wind and the
NOAA filed cross-motions for summary judgment, and after a hearing,
the district court remanded the case to the ALJ to rule as a matter
of law on whether 50 C.F.R. 650.7(a) requires "knowing"
possession of nonconforming scallops. On remand, the ALJ
determined that the regulatory offense imposed strict liability and
did not require scienter. The case returned to the district court,
which granted summary judgment for the NOAA. Northern Wind
appeals.
 II.
 Standard of Review
 We review a district court's grant of summary judgment de
novo. See Associated Fisheries of Maine, Inc. v. Daley, 127 F.3d
104, 109 (1st Cir. 1997); Massachusetts Dep't of Pub. Welfare v.
Secretary of Agric., 984 F.2d 514, 520 (1st Cir. 1993). Here,
however, the review is further limited because "the Magnuson Act
incorporates the familiar standard of review associated with the
Administrative Procedure Act (APA)." Associated Fisheries, 127
F.3d at 109; see also 16 U.S.C. 1855(b). That standard accords
great deference to agency decision-making; the agency's decision is
presumed valid, and judicial review is solely to determine whether
substantial evidence in the record supports the decision. See
Associated Fisheries, 127 F.3d at 109; see also Citizens To
Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16 (1971). 
Moreover, although an agency's answers to questions of law require
somewhat greater scrutiny, the court owes "substantial deference to
an agency's interpretation of its own regulations." Thomas
Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994).
 III.
 Discussion
 Northern Wind raises three arguments on appeal. First,
it contends that Ocean Obsession mixed together the two shipments
of scallops before the NMFS measured them, and that this mixing
puts them beyond the reach of the applicable regulations. See 50
C.F.R. 650.7(a), 650.2. Second, Northern Wind contends that it
did not "possess" the scallops within the meaning of those
regulations. Finally, Northern Wind contends that only "knowing"
possession is proscribed by the regulations, and it did not
"knowingly" possess the scallops. We will address each contention
in turn. 
 A.
 As we have noted, Northern Wind originally argued to the
ALJ that by the time the NOAA inspected the allegedly nonconforming
scallops, they already had been shucked on land, making it
impossible to determine if prior to shucking they conformed to the
regulations. As Northern Wind concedes in its brief, the "primary
issue" before the ALJ was "whether the seized scallops originated
from shell stock shucked at sea," in which case they would be
subject to regulation, "or on land," in which case they would not. 
However, Northern Wind presented a different theory in its petition
for discretionary review of the ALJ's decision. Rather than
arguing to the Deputy that the scallops had been shucked on land,
Northern Wind claimed that Ocean Obsession's combined carriage of
the Canton and Weymouth bags to its facilities constituted a mixing
transaction that put the scallops outside of the regulations'
reach.
 The failure to raise this argument to the ALJ constitutes
an administrative waiver, which precludes its assertion on appeal. 
See 15 C.F.R. 904.273(d) (rendering issues of law or fact waived
unless "they were raised for the first time in the initial
decision, or could not reasonably have been foreseen and raised by
the parties during the hearing"). Under most circumstances, courts
will not consider issues that were not raised in prior
administrative proceedings. See Massachusetts Dep't of Pub.
Welfare, 984 F.2d at 523. This rule preserves "judicial economy,
agency autonomy, and accuracy of result" by requiring full
development of issues in the administrative setting to obtain
judicial review. Eagle Eye Fishing Corp. v. United States Dep't of
Commerce, 20 F.3d 503, 505 (1st Cir. 1994). The only exceptions to
this rule are for significant issues of law that are jurisdictional
in nature, constitutional in magnitude or otherwise so compelling
as to require judicial review. See Eagle Eye, 20 F.3d at 505;
Massachusetts Dep't of Pub. Welfare, 984 F.2d at 524.
 Northern Wind concedes that its mixing argument does not
fall within any exception to the waiver rule, but maintains that
the issue was not waived because it sufficiently was raised in the
original ALJ hearing and reasserted in the administrative appeal. 
We disagree. The record of the original administrative hearing
indicates that Northern Wind only raised issues of where the
scallops were harvested, whether the scallops were shucked at sea
or on land, and whether Northern Wind had actual possession of
them. The first mention of the mixing argument came, and failed,
at the discretionary administrative appeal. Northern Wind advances
no reason why it could not have raised the mixing issue at the
administrative hearing before the original ALJ, who allowed
testimony regarding the two separate shipments. The deciding ALJ
also made a specific finding in his decision based upon the record
of the hearing, that there were two separate shipments at the
storage facility. Because Northern Wind failed to raise the mixing
argument in the appropriate administrative venue, we find it
administratively waived. 
 B.
 Northern Wind also argues that it never had possession of
the offending scallops. More specifically, Northern Wind contends
that possession requires dominion or control over an object,
creating a possessory property right in that object. It asserts
that its agreement to allow Ocean Obsession to store scallop stock
at its facilities was merely a lease or other contractual right,
which did not create a possessory right in the scallops or
otherwise amount to possession. 
 As we have mentioned, we accord substantial deference to
the agency's interpretation of its own regulations. See Thomas
Jefferson, 512 U.S. at 512. "[T]he agency's interpretation must be
given 'controlling weight unless it is plainly erroneous or
inconsistent with the regulation.'" Id. (quoting Bowles v. Seminole
Rock & Sand Co., 325 U.S. 410, 414 (1945)).
 The regulation that implements the Magnuson Act makes it
unlawful to possess nonconforming scallops. See 50 C.F.R. 
650.7(a). The deciding ALJ read the term "possession" in the
regulation not to require ownership of the scallops and concluded
that Northern Wind possessed the scallops because it allowed them
to be stored at its processing facility. This finding is clearly
not erroneous and is consistent with other NOAA cases interpreting
the term "possession" under these regulations. See In re Whitney,
6 O.R.W. 479 (NOAA 1991) (including in the definition of
"possession" having and holding as property or having a "just
right" to); In re L.D. Amory & Co., 5 O.R.W. 100 (NOAA 1988)
(finding a seafood processor in "possession" of nonconforming
scallops because it allowed undersized scallops to be offloaded at
its facility and it assisted in packing and icing the scallops for
transport, storage, and resale); In re Axelsson & Johnson Fish Co.,
5 O.R.W. 51 (NOAA 1987) (finding seafood dealers to be in
possession of nonconforming scallops because they allowed scallops
to be offloaded at their docks with their equipment). 
 The evidence at the hearing demonstrated that Northern
Wind provided Ocean Obsession with storage space and unlimited
access to that space for the storage of its offloaded scallops. 
The evidence also established that Northern Wind could inspect the
scallops at will, could choose to take and purchase the scallops,
and had a "just right" to them because it could prevent Ocean
Obsession from taking any action on the scallops until it had
exercised its right of first refusal. On the basis of this
evidence, we cannot say that the ALJ's interpretation of the term
"possession" was plainly erroneous or inconsistent with the NOAA's
regulations. Nor can we say that the ALJ's application of the law
to the facts was not supported by substantial evidence.
 C.
 Northern Wind's final argument is that the regulation
requires "knowing" possession before a civil penalty can be
imposed. It claims that it did not know the scallops had been
delivered, that it had not had an opportunity to inspect them, and
that it was unaware of their nonconformance under the regulations,
or even of their presence.
 This argument fails. As a general matter, scienter is
not required to impose civil penalties for regulatory violations
when the regulation is silent as to state of mind. See Tart v.
Massachusetts, 949 F.2d 490, 502 (1st Cir. 1991). Further, a mens
rea element is never presumed for regulatory offenses. Id.; but
cf. Morissette v. United States, 342 U.S. 246 (1952) (finding that
mens rea is presumptively required for criminal offenses). 
Moreover, scienter never has been required for violations of public
welfare regulations because they "'are not in the nature of
positive aggressions or invasions, . . . but are in the nature of
neglect where the law requires care, or inaction where it imposes
a duty.'" United States v. White Fuel Corp., 498 F.2d 619, 622 (1st
Cir. 1974) (quoting Morissette, 342 U.S. at 255-56). Finally,
"'[s]cienter is not an element of a civil defense under the
[Magnuson Act]. Because conservation-related offenses under the
[Magnuson Act] are strict liability offenses, [Northern Wind]'s
protests as to [its] state of mind are irrelevant.'" In re
Whitney, 6 O.R.W. at 483 (quoting In re Alba, 2 O.R.W. 670, 673
(NOAA 1982)); accord In re El Jefe, 5 O.R.W. 453, 455 (NOAA 1989);
In re Meredith Fish Co., 4 O.R.W. 66, 67 (NOAA 1985).
 IV.
 Conclusion
 For the reasons stated, the district court properly
entered summary judgment in favor of the NOAA. Northern Wind
previously had waived its mixing argument by failing to argue it at
the first administrative hearing. Moreover, the deciding ALJ's
determinations that Northern Wind possessed the scallops and thatthe regulation has no scienter requirement were not plainly
erroneous and are consistent with the regulation.
 Affirmed.